___



SO ORDERED,

**Judge Jason D. Woodard**

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.
___

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| MATTHEW COBURN, | ) | Case No.: | 16-12497-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 7 |

| | | | |
|---|---|---|---|
| JERRY PAUL MIZE, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | A.P. No.: | 16-01079-JDW |
| | ) | | |
| MATTHEW COBURN, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION[1]

This adversary proceeding came before the Court for trial on November 1, 2018, on the *Complaint to Determine Nondischargeability of Debt* (the

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

"Complaint") (A.P. Dkt. #1) filed by the creditor-plaintiff Jerry Paul Mize (the "Plaintiff") against the debtor-defendant Matthew Coburn (the "Defendant"). Both the Plaintiff and the Defendant appeared and testified, as did the Plaintiff's wife, Allyson Mize, and the Defendant's father-in-law, William Houston.

The parties agree that for the better part of a year, the Defendant trespassed on the Plaintiff's property and stole various car parts stored there. The parties disagree as to what, exactly, the Defendant stole, and the amount of the Plaintiff's claims arising from the theft. In his Complaint, the Plaintiff asks the Court to liquidate his state law claims against the Defendant for larceny, trespass to real property, and intentional infliction of emotional distress and deem the resulting debt nondischargeable pursuant to 11 U.S.C. § 523(a)(4),[2] as a debt arising from larceny.

The Defendant pleaded guilty to Grand Larceny for the theft of the car parts and is currently serving a 20-year sentence, suspended, including 5 years of supervised probation, arising out of that plea. The Defendant concedes that any liquidated claim is nondischargeable, but disagrees with the Plaintiff regarding the value of the stolen parts or consequential damages to the cars from the removal. The Court has considered the evidence, the arguments of

---

[2] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

2

counsel, and the law, and makes the following findings of fact and conclusions of law regarding the amount of the Plaintiff's state law claims.[3] The Court further concludes that the claim is nondischargeable under § 523(a)(4) of the Bankruptcy Code.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A),(B), (I), and (O).

## II. AGREED FACTUAL BACKGROUND

The Defendant's in-laws, the Houstons, own property (the "Houston Property") adjacent to the Plaintiff's property. At some point prior to May 2012, while hunting on the Houston Property, the Defendant noticed hundreds of old automobiles and automobile parts that were being stored on the Defendant's property (the "Property"). From May 2012 through March 2013, the Defendant dressed in camouflage and entered the Property (by way of the Houston Property) a maximum of three times per month and stole car parts belonging to the Plaintiff, many of which he then sold. In March 2013, the

---

[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

3

Defendant was arrested and charged with multiple counts of larceny. On January 22, 2015, the Defendant pleaded guilty to Grand Larceny for unlawfully, willfully, feloniously taking, stealing, and carrying away the property of the Plaintiff, in the form of assorted automobile parts and other items of value in violation of Mississippi Code § 97-17-41(3). In addition to his suspended sentence, the Defendant was assessed and paid $30,000 in restitution to the Plaintiff.

### III.   FINDINGS OF FACT & CONCLUSIONS OF LAW

In order for the Court to conclude that any debt owed to the Plaintiff by the Debtor is nondischargeable, the Plaintiff must first show that he holds a valid claim against the Debtor. *Ohio Casualty Insurance Co. v. Hryhorchuck (In re Hryhorchuk)*, 211 B.R. 647, 650 (Bankr. W.D.Tenn. 1997) (citing *Grogan v. Garner,* 498 U.S. 279, 282 (1991)). Then, the Plaintiff must demonstrate how and why that claim is nondischargeable under the Bankruptcy Code. *Id.* As explained by the Supreme Court in *Grogan*, "[t]he validity of a creditor's claim is determined by rules of state law. Since 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan,* 498 U.S. at 283-84 (internal citations omitted).

### A. The Plaintiff's Claims

#### 1. Conversion

The Plaintiff first asserts a claim against the Defendant for common law conversion under Mississippi law. "[I]n order to maintain an action for conversion [under Missisisppi law], there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights . . ." *Cmty. Bank, Ellisville, Miss. v. Courtney,* 884 So.2d 767, 773-74 (Miss. 2004) (citing *First Investors Corp. v. Rayner,* 738 So.2d 228, 234–35 (Miss.1999) (further citations omitted)). The Defendant crept onto the Property and took car parts he knew did not belong to him. The Defendant admits that his actions constitute conversion, but the parties disagree as to what was stolen and the amount of the resulting damages.

#### a. Actual Damages

In a conversion case, the measure of damages is the value of the property at the time and place of the conversion. *Lang v. Beasley,* 159 So.3d 593, 595 (Miss. Ct. App. 2014), *cert. denied,* 158 So.3d 1153 (Miss. 2015) (citing *Courtney,* 884 So.2d at 772). A party may testify as to the value of his own property. *Id.* Whether the owner's opinion is accurate is a matter for cross-examination and goes merely to the weight of the evidence, not to admissibility. *Id.*

The Court has heard the testimony of the witnesses and reviewed the other evidence submitted by the parties. The Court has seen pictures of the vehicles in question and understands the condition of those vehicles, both before and after the Defendant's theft of certain parts.

There are credibility issues regarding the testimony of both parties. The Defendant admits he stole items from the Plaintiff and sold many of those items.[4] The condition of the vehicles is significantly worse than testified to by the Plaintiff, who understandably sees his "collection of vintage automobiles" through a rosier lens than those without a sentimental attachment. The vehicles from which the Defendant stole parts have been left out in a field for over a decade, without cover or shelter, to rust and otherwise deteriorate due to time, the elements, wildlife, vegetation, and nature. The pictures of the vehicles introduced by the Plaintiff himself are indeed worth the proverbial thousand words. Without any intention to be disrespectful, the Court concludes that the pictures demonstrate the unavoidable fact that what the Plaintiff describes as his "collection of vintage, classic automobiles" is actually more akin to a junkyard. (Trial Exh. P-20 and P-21).

The pictures reflect grass growing around and even in the vehicles, dry rot, and extensive damage from exposure to the elements and to vermin. In

---

[4] Many other stolen parts were returned to the Plaintiff after the Defendant was arrested.

some cases, entire sections of vehicles are missing, and in others, large tree limbs were lying across a vehicle. The Plaintiff could not recall when he purchased any of the vehicles, how much he paid for them, or when they were last operable. Moreover, he has not sold or tried to sell any of the vehicles at issue. His valuation consisted of a list of the automobiles from which parts were stolen, including his estimation of the value before and after the removal of those parts. (Trial Exh. P-13). Other evidence from which the Court was able to determine what was stolen and the damages resulting from that theft include the investigative report of the Lafayette County Sheriff's Department (Trial Exh. P-1), the printout of the Defendant's Ebay account (Trial Exh. P-14), and the Defendant's answers to the Plaintiff's First Set of Interrogatories and Requests for Production of Documents (Trial Exh. P-19).

### i.   Damages for Stolen Parts

The Court found the evidence regarding what the Defendant stole particularly compelling regarding the items which were identified across all the exhibits. The vehicles that were listed as missing parts were close to, but not quite, identical across the lists prepared by both the Plaintiff and the Defendant. Conversely, what was less compelling was the Plaintiff's allegation that the Defendant converted all the "loose parts" identified in his accounting of missing items. The list of loose parts was incomplete, vague, and speculative (for example, the Plaintiff did not appear to know how many of each item he

7

owned). The unreliable nature of this exhibit leads the Court to conclude that the Plaintiff did not meet his burden to establish that the Plaintiff converted those parts.

Accordingly, in calculating the damages for conversion, the Court begins with the list of parts the Defendant admits he stole in his answers to the Plaintiff's Interrogatories (Trial Exh. P-19) and the amounts for which he sold those items on eBay. The items were listed on eBay without a "reserve," or minimum acceptable bid. Because the eBay sales were in the nature of "black-market" sales, the Court assigns a higher value to those items than the eBay sale price to account for this. *See U.S. v. Onyiego,* 286 F.3d 249, 255 (5th Cir. 2002) ("[T]he black market price of a stolen good will reflect a discount from the fair market price (i.e., value) of that good."). After reviewing this evidence, the Court determines that the aggregate value of the parts converted by the Defendant totals $18,836.00.

### ii.     Damages for Diminution in Value

The Court then turns to the list of automobiles prepared by the Plaintiff (Trial Exh. P-13). There are damages related to the diminution in value of the automobiles over and above the value of the stolen parts. For example, the Defendant cut and effectively destroyed wires and wire harnesses and stole parts that are difficult to replace in decades-old vehicles. Other parts not stolen were bent or broken during the thefts. In calculating the amount of

8

diminution in value caused to these vehicles by the Defendant's conversion, the Court first reduced the "before" values of the vehicles to reflect the actual condition of the vehicles as depicted in the pictures (Trial Exh. P-20 and P-20). Next, the Court determined the diminution in value to the vehicles, and thus the current value of the vehicles, considering the before and after condition of the vehicles as set forth in the written descriptions of the damage and the already poor condition of the vehicles as depicted in the pictures. Finally, the Court subtracted from the diminished values the value of the parts themselves (in other words, so the Plaintiff would not be "double-dipping" by receiving credit for both the value of a part and the diminution of the value of the vehicle based solely on the removal of that part). This extensive review of the evidence results in the Court's determination that the value of the Plaintiff's vehicles diminished $30,727.50 over and above the value of the stolen parts.

The Court holds that the total actual damages for the Defendant's conversion of the Plaintiff's property is $49,563.50.

### b. Punitive Damages

The Plaintiff also seeks an award of punitive damages. Punitive damages are properly allowed where the tort complained of was malicious, wanton, wilful, or capricious. *C & C Trucking Co. v. Smith*, 612 So.2d 1092, 1102 (Miss. 1992) (citations omitted). The Defendant's conversion of the

Plaintiff's property was clearly willful. Accordingly, punitive damages are warranted.

Under Mississippi law, the purpose of punitive damages is to "punish the wrongdoer and deter similar misconduct in the future by the defendant and others." MISS. CODE ANN. § 11-1-65(1)(e). In determining the amount of punitive damages, the court considers:

> (1) the defendant's financial condition and net worth; (2) the nature and reprehensibility of the defendant's wrongdoing, for example, the impact of the defendant's conduct on the plaintiff, or the relationship of the defendant to the plaintiff; (3) the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; (4) the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; and (5) any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages.

*Id.* Upon consideration of these factors, the Court holds that a .5 multiplier of compensatory damages is sufficient to meet the goals of a punitive damage award. The Defendant testified that he owns no property other than a mortgaged home and he earns $12.00 an hour. The Defendant is a debtor in chapter 7 no-asset bankruptcy case, and his schedules reflect no nonexempt assets. While his behavior was clearly improper, the Court is satisfied that it will not be repeated. He admitted his crime on the day he was arrested. He agreed to pay, and has paid, restitution. His testimony regarding his remorse for his actions was credible, and a larger award of punitive damages is

unwarranted in this case. The Court will therefore award punitive damages to the Plaintiff in the amount of $24,781.75.

### 2. Trespass to Real Property

Next, the Plaintiff asserts a claim for common law trespass to real property under Mississippi law. "Trespass is an intrusion upon the land of another without a license or other right for one's own purpose." *Thomas v. Harrah's Vicksburg Corp.*, 734 So. 312,319 (Miss. Ct. App. 1999). The Defendant admits he did exactly that – he entered upon the Property without invitation to steal the Plaintiff's personal property. Accordingly, judgment will be entered in favor of the Plaintiff on his claim for trespass to real property.

The typical award of damages for common law trespass is the reasonable rental value of the property. *Id.* Nominal damages may instead be awarded for a technical injury due to a violation of a plaintiff's legal right, a consequence of which requires an award of some damage to determine that right, even though no actual damages are proven. *Wells v. Branscome,* 74 So.2d 743, 745 (1954) ($.01 award for nominal damages).

In this case, only nominal damages are warranted for the Defendant's trespass onto the Property. His incursion onto the Property was very limited in scope and duration (minutes at a time) and caused no actual damage beyond the damages awarded for conversion of the personal property. The Defendant's trespass did not exclude the Plaintiff and his family from the use of the

Property; in fact, for the vast majority of the time period in which the Defendant occasionally trespassed onto the Property, the Plaintiff was not aware of that trespass. In addition, the rental value requested by the Plaintiff is purely speculative, with no articulated basis in fact as to what a reasonable rental value of the Property would be. Accordingly, the Court concludes that $250 is an appropriate damage award for the trespass claim.

### 3. Intentional Infliction of Emotional Distress

Finally, the Defendant asserts a claim of intentional infliction of emotional distress. To sustain a claim of intentional infliction of emotional distress under Mississippi law, a defendant's "conduct must be wanton and willful, as well as evoke outrage or revulsion." *Collins v. City of Newton,* 240 So.3d 1211, 1220 (Miss. 2010) (citing *Speed v. Scott,* 787 So.2d 626, 630 (Miss. 2001)). The severity of the acts should be such that they are atrocious and intolerable in a civilized society. *Id.* Among the kind of actions that have been found to evoke such outrage were a plot by a girlfriend and her parents to hide the child of an unwed father, arranging for the baby to be adopted by strangers while the father pursued a custody suit. *Smith v. Malouf,* 722 So.2d 490, 498 (Miss.1998). In another suit a car dealership forged a customer's name on a sales contract and sold the contract to a finance company, resulting in the customer's credit being damaged. *T.G. Blackwell Chevrolet Co. v. Eshee,* 261 So.2d 481, 486 (Miss.1972). A Mississippi federal court in this district defined

the necessary severity as acts "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Collins*, 240 So.3d at 1220 (citing *Pegues v. Emerson Elec. Co.,* 913 F.Supp. 976, 982 (N.D. Miss. 1996)).

"Meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Jenkins v. City of Grenada,* 813 F.Supp. 443, 446 (N.D.Miss.1993). That high bar is not met in this case. While it is true that theft cannot be tolerated in our society, it is equally clear that the Defendant's actions were more in the nature of a crime of opportunity than an outrageous, malicious, and nefarious plot to terrorize the Plaintiff or his family.

To allow the Plaintiff to prevail on a claim for intentional infliction of emotional distress, in addition to both actual and punitive damages for conversion, is unnecessary "piling on." The Defendant confined his behavior to the perimeter of the Plaintiff's property, approximately 500 yards away and out of sight of the Plaintiff's home. The Defendant was caught quickly after the discovery of the thefts, and, in the meantime, the Plaintiff and his wife's behavior belie their statements that they were fearful of their own safety.[5] The

---

[5] The Plaintiff's wife testified but is not a plaintiff in this case.

13

Plaintiff installed a game camera near the Property/Houston Property line once he realized that was how the thief was gaining access to this property. He never installed a security system or any cameras closer to his home. The Court holds that the Defendant's behavior does not rise to the level of that required to support a claim for intentional infliction of emotional distress under Mississippi law.

### 4. Credit for Paid Restitution

The amount of the judgment to be entered against the Defendant must be reduced by the amount of restitution already paid by the Defendant to the Plaintiff in the related criminal proceedings. MISS. CODE ANN. § 99-37-17(1) ("[T]he Court shall credit any restitution paid by the defendant to a victim against any judgment in favor of the victim in such civil action."). The Defendant has paid the full criminal restitution amount of $30,000.

### 5. Attorney's Fees

The Plaintiff is also entitled to an award of the attorney's fees he incurred in pursuit of his conversion claim. Attorney's fees are not part of compensatory damages when calculating punitive damages, and are considered separately. *KLLM Transport Services, LLC v. JBS Carriers, Inc.*, 2017 WL 6614813 (S.D. Miss. December 22, 2017). Plaintiff's counsel introduced an affidavit of attorney's fees and costs at trial, reflecting $890.20 in expenses and $30,152.70 in attorney's fees. The Defendant did not object to

either the introduction of the affidavit or to the reasonableness of the fees requested. After applying the *Johnson* factors, the Court finds the requested fees both reasonable and necessary. *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Accordingly, the Plaintiff is entitled to an award of $31,042.90 in attorney's fees and costs.

### B. Nondischargeability

Having concluded that the Plaintiff holds valid claims for damages for conversion and trespass to real property, the Court must next determine whether that claim is dischargeable. Section 523 of the Bankruptcy Code outlines certain exceptions to discharge in bankruptcy proceedings. Exceptions to discharge are to be construed strictly against the objecting creditor to give effect to the fresh start policy of the Bankruptcy Code. *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997) (*citing Murphy & Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873, 880 (5th Cir. 1982)). The creditor bears the burden of proof of establishing by a preponderance of the evidence that the debt in question should be excepted from discharge. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). The Plaintiff asserts that its claim is nondischargeable pursuant to §523(a)(4), which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt
> . . . .

15

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4).

The phrase "debt for" means "debt arising from" or "debt on account of." *Cohen*, 523 U.S. at 220-21. Section 523(a)(4) "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtors." *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998). There are three separate types of debts that are nondischargeable under §523(a)(4): (1) debts resulting from fraud or defalcation while acting in a fiduciary capacity; (2) debts resulting from embezzlement; and (3) debts resulting from larceny. *Humphries v. Rogers (In re Humphries)*, 516 B.R. 856, 866 (Bankr. N.D. Miss. 2014). In this case, the parties agree that the debt is nondischargable under the third prong of § 523(a)(4): debts arising from larceny.

Federal common law defines larceny as a "felonious taking of another's personal property with intent to convert it or deprive the owner of same." *Mid-South Maintenance, Inc. v. Burk (In re Burk)*, 583 B.R. 655, 671 (N.D. Miss. 2018) (quoting *Smith v. Williams (In re Smith)*, 253 F.3d 703, 2001 WL 498662 *2 (5th Cir. 2001) (unpublished)). The plaintiff must prove by a preponderance

of the evidence the two elements of larceny: (1) the fraudulent and wrongful taking away of the property of another with (2) the intent to convert it to the taker's use and with the intent to permanently deprive that owner of such property. *In re Cowin*, 864 F.3d 344, 350 (5th 2017). These elements are similar to the elements of common law conversion under Mississippi law, as set forth above. The Defendant's actions constitute both conversion under Mississippi law and larceny under federal common law, and so the debt arising from the Defendant's theft of the Plaintiff's property is nondischargeable under § 523(a)(4).

## IV. CONCLUSION

The Plaintiff has proven a claim for conversion and trespass to real property under Mississippi law. The Plaintiff has incurred damages in the following amounts: $49,813.50 in compensatory damages ($49,563.50 for conversion and $250 for trespass), $24,781.75 in punitive damages related to the conversion, and $31,042.90 in attorney's fees and costs, for a total of $105,638.15. This amount must be reduced by the $30,000.00 in restitution that the Defendant has already paid to the Plaintiff, resulting in a judgment of $75,638.15. The Court will enter a separate Final Judgment in this amount, which shall be nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

##END OF OPINION##